UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LINCOLN GENERAL INSURANCE      §
COMPANY,       §
            §
     **Plaintiff,**      §
            §
v.             §     CIVIL ACTION NO. 3:10-CV-2307-B
            §
U.S. AUTO INSURANCE SERVICES,      §
INC., *et al.,*        §
            §
     **Defendants.**      §

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment (doc. 98), filed November 18, 2011, and Defendants' Motion for Partial Summary Judgment (doc. 95), also filed November 18, 2011. For the reasons stated below, the Court finds that Plaintiff's Motion should be and hereby is **DENIED** and that Defendants' Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND

This case involves the alleged miscalculation and underpayment of amounts owed to Plaintiff Lincoln General Insurance Company ("Lincoln General") by Defendant U.S. Auto Insurance Services, Inc. ("U.S. Auto"). Lincoln General is the reinsurer of a variety of auto insurance policies sold by U.S. Auto, as Managing General Agent for State and County Mutual Fire Insurance

Company ("State and County"). Pl.'s Am. Compl. ("Pl.'s Compl.") ¶¶ 1, 28. Doug Maxwell is the sole shareholder, director, and officer of U.S. Auto. *Id.* ¶ 18.

Pursuant to General Agency Agreements ("GAAs") and Reinsurance Agreements (the "Agreements" or "Reinsurance Agreements") signed in 2002 and 2003 between the foregoing entities, Lincoln General alleges that it was entitled to a portion of the premiums collected on the policies sold by U.S. Auto. *Id.* ¶. U.S. Auto's responsibilities under the Agreements included the "collection and handling of premiums." *Id.* ¶ 31. The Agreements "also required U.S. Auto to provide Lincoln General with monthly reports detailing and calculating the amounts owing to Lincoln General." *Id.* ¶ 40. In exchange for its services, U.S. Auto was to receive 20.6% of premiums as a base commission; these are referred to as "ceding commissions" in the Agreements. *Id.* ¶ 32. Additionally, U.S. Auto could receive an adjusted commission ("Contingency Commission") from collected premiums as a reward for good performance if Incurred Losses[1] were below specific targets. *Id.* ¶ 33. These collected premiums were held in trust accounts. *Id.* ¶ 36.

Under the GAAs, U.S. Auto deducted several payments from the trust, which included both the ceding commission and Contingency Commission payments.[2] *Id.* ¶ 37. In order to properly calculate the Contingency Commission, U.S. Auto estimated Incurred But Not Reported Losses[3]

---

[1] Under the Agreements, Incurred Losses are defined as the sum of losses paid and allocated loss adjustment expenses paid plus reserves for outstanding losses and outstanding allocated loss adjustment expenses plus an amount representing "incurred but not reported" losses ("IBNR"). Pl.'s Compl. ¶ 33, n.3.

[2] The other payments included the following: payments for losses, amounts due to Lincoln General and State and County, premium refunds to policyholders, and the 8% allowance for loss adjustment expenses. Pl.'s Compl. ¶ 37.

[3] The parties rely on IBNR because when insurance policies are issued, some or all of the premiums may have been paid, yet no losses will have been incurred. Therefore, there is uncertainty as to how much will eventually be paid out under the policy. Furthermore, policyholders may not be quick to report their

("IBNR"). *Id.* ¶ 43. Because U.S. Auto earned a Contingency Commission only when incurred losses were below target levels, including the proper level of IBNR is critical to deducting the correct amount that is owed to U.S. Auto. *Id.* After deducting these payments, the remaining balance was forwarded to Lincoln General on a monthly basis and deposited in an escrow account ("Premium Trust Account"). *Id.* ¶ 37; Defs.' Br. Supp. Mot. Summ. J. ("Defs.' Br.") 5.

Beginning in late 2006, the premiums collected by U.S. Auto and retained in the Premium Trust Account were insufficient to pay losses arising from the Reinsurance Agreements. *Id.* ¶ 39. Consequently, Lincoln General established a Zero Balance Account ("ZBA"), which it funded, for the payment of Lincoln General's share of any claims on policies it reinsured. *Id.* U.S. Auto was permitted to write checks drawn upon the ZBA to pay for Lincoln General's share of reinsured claims. *Id.* Lincoln General alleges that U.S. Auto improperly used funds from the ZBA to pay for claims on insurance policies not reinsured by Lincoln General, amounting to losses of $845,052. *Id.* ¶ 58.

In April, 2007, U.S. Auto transferred its reinsurance business from Lincoln General to one of its own subsidiaries, Santa Fe Auto Insurance Company ("Santa Fe"). *Id.* ¶ 44. Around that same time, U.S. Auto also purportedly began withholding premiums due to Lincoln General. *Id.* ¶ 47. Lincoln General alleges U.S. Auto, in order to increase its own compensation, stopped using the method it had used for calculating its commissions under the Agreements for the prior four years. *Id.* Specifically, U.S. Auto began to withhold IBNR when calculating the Contingent Commission. *Id.* As a result, this system of calculation allegedly withheld and misappropriated millions of dollars

---

claims, and there may be disagreements over such claims, so insurers are generally uncertain of their total incurred losses until several years after the policies' coverage periods have ended. Pl.'s Compl. ¶ 42.

from Lincoln General to U.S. Auto. *Id.* ¶¶ 47-56. Lincoln General alleges that U.S. Auto manipulated the Contingent Commissions by excluding IBNR for the 2002-2005 Agreement years and removed IBNR from all 2007 Agreement Year Contingent Commission calculations. *Id.* ¶ 51. Lincoln General estimates that U.S. Auto withheld and misappropriated nearly $18,000,000 and thereby violated both contract and statutory law. *Id.* ¶ 53. Two lawsuits followed.

Lincoln General first brought suit against Defendants for the above-described conduct on November 27, 2007.[4] (*See generally* Pl.'s Compl., *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-cv-1985-B (N.D. Tex. Nov. 27, 2007)). In that case, Lincoln General brought claims of breach of contract, tortious interference with contract, breach of trust and/or fiduciary duties, aiding and abetting breach of trust and/or fiduciary duties, misappropriation and conversion of funds, unjust enrichment, and equitable accounting. Pl.'s Am. Compl. ¶¶ 56-83, *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-cv-1985-B (N.D. Tex. May 1, 2008). In May 2009, the parties stipulated to the dismissal of the entire case without prejudice, representing to the Court that they had entered into an agreement that settled all pending claims. Stip. Dismissal, *Lincoln Gen. Ins. Co. v. U.S. Auto*

---

[4] In the 2007 case, as in this case, Lincoln General alleged that several entities and individuals related to U.S. Auto were also liable for the same or similar conduct. Of these other Defendants, U.S. Auto is affiliated with Defendants Gamma Group Inc. ("Gamma"), CSI Agency Services, Inc. ("CSi"), Alpha Partners, Ltd. ("Alpha"), and Santa Fe, sharing both a business address and office space with each of them. Pl.'s Compl. ¶ 18. According to Lincoln General, these companies have allegedly "acted as guarantors for at least some of each others' liabilities, sponsor[ed] and administer[ed] shared benefit plans, share[d] (at least in part) common ownership and leadership, . . . combined financial statements (at least with regard to all companies but Santa Fe . . .), and share[d] and integrate[d] their resources to achieve the common business purpose of providing insurance-related services." *Id.* Defendant Doug Maxwell has substantial ownership interests in these companies and maintains significant control over them, holding various leadership positions in each. *Id.* ¶ 19. He is also alleged to have commingled his personal assets with those of the companies. *Id.* ¶ 20. Defendant Jim Maxwell is Defendant Doug Maxwell's father, who allegedly provided substantial funding to the companies and "intentionally and willfully assisted, induced, and/or conspired" in U.S. Auto's contravention of the Agreements. *Id.* ¶¶ 21, 56.

*Ins. Servs., Inc.*, No. 3:07-cv-1985-B (N.D. Tex. May 7, 2009). As a condition of their settlement, the parties signed a Memorandum of Understanding ("MOU"), which included a provision stating, "[i]n the event that the parties are not able to complete all of the actions required under this Memorandum of Understanding . . . , Lincoln's sole remedy shall be to refile the lawsuit." Pl.'s Compl. Ex. B. [hereinafter "Mem. of Understanding"] § IX).

On November 12, 2010, Lincoln General filed its Original Complaint in the instant action, re-alleging its 2007 claims and adding other claims (doc. 1). On September 6, 2011, Lincoln General filed an Amended Complaint (doc. 57) that includes the following claims: (1) breach of contract (Lincoln General v. U.S. Auto); (2) conversion of expiring insurance policies (Lincoln General v. U.S. Auto & Santa Fe); (3) breach of trust and/or fiduciary duties (Lincoln General v. U.S. Auto); (4) misappropriation and conversion of funds (Lincoln General v. U.S. Auto); (5) tortious interference with contract (Lincoln General v. Gamma); (6) breach of trust/fiduciary duties (Lincoln General v. Doug Maxwell); (7) aiding and abetting breach of trust and/or fiduciary duties; (8) tortious interference with contract; and (9) attorney's fees. On September 14, 2011, Defendants filed an Answer (doc. 62) that denied liability for each of Plaintiff's claims, and included a counterclaim for attorney's fees. On November 18, 2011, both Lincoln General and U.S. Auto, along with the other Defendants, filed a Motion for Partial Summary Judgment. Plaintiff's Motion seeks summary judgment for its claims of breach of fiduciary duty against U.S. Auto, breach of fiduciary duty against Doug Maxwell, breach of contract, and U.S. Auto's counterclaim for breach of contract. Defendants seek to obtain a dismissal of all of Lincoln General's claims against all Defendants, save for Lincoln General's breach of contract claim against U.S. Auto.

Both parties have filed response and reply briefs. The Motion thus being ripe, the Court turns to the merits of its decision.

## II.

## LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

Defendants' Motion for Summary Judgment seeks dismissal of all of Plaintiff's claims, except for Plaintiff's claim for breach of contract. Plaintiff's Motion for Summary Judgment, on the other hand, contends that it should be granted judgment as a matter of law regarding its claims for breach of fiduciary duty against U.S. Auto and Doug Maxwell, and its claim for breach of contract. Plaintiff further argues that Defendants' counterclaim for attorney's fees should be dismissed as a matter of law. Because Plaintiff's claims for breach of fiduciary duty affect the remaining causes of action, the

Court will first address the parties' arguments to determine whether Defendants owed Plaintiff a fiduciary duty.

A.      *Fiduciary Duty*

Lincoln General alleges that both U.S. Auto and Doug Maxwell breached fiduciary duties by failing to perform duties required by the GAAs. Lincoln General contends that the fiduciary duty derives both from common law and by virtue of the contracts between the parties. Defendants dispute this and argue that while they may have owed a fiduciary duty to State and County for limited tasks, they owed no fiduciary duty to Lincoln General. The Court must determine whether a fiduciary relationship exists between Lincoln General and Defendants.

In Texas, the elements for breach of fiduciary duty consist of the following: (1) the existence of a fiduciary relationship between plaintiff and defendant; (2) a defendant's breach of the fiduciary duty it owed plaintiff; and (3) the breach either caused injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d. 440, 447 (Tex. App.—Dallas 2006, pet. denied)). Texas law recognizes two types of fiduciary duties. *Id.* at 283. "The first, a formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" *Id.* (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). Thus, an agent has a duty to deal fairly with the principal in all transactions between them. *Id.* The second is created informally, "where there is a close personal relationship of trust and confidence." *Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006). This second type of fiduciary duty arises from a "moral, social, domestic, or purely personal relationship of trust and confidence." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).

i.      Whether U.S. Auto Owed a Fiduciary Duty under the GAA

Lincoln General argues that the GAAs expressly provide that U.S. Auto is to act as a fiduciary with respect to the reinsuring party. Under Section 7.1 of the GAAs, U.S. Auto, as the agent, "shall accept and maintain at all times all premiums collected and other funds relating to the business written under the Agreement as a fiduciary for the Company [State and County]." Pl.'s App. 112, GAA ¶ 7.1. As Defendants note, this portion of the contract is consistent with Texas statutory law, which states that "[a] managing general agent holds money on behalf of an insured or insurer in a fiduciary capacity . . . ." TEX. INS. CODE § 4053.106 (West 2009). Lincoln General reasons that this provision, when read with the Reinsurance Agreements as well as two portions of the GAAs, extends this fiduciary duty to the reinsurer. Article XIX of the Reinsurance Agreements states, "While for regulatory purposes, the Agent [U.S. Auto] will need to be appointed as the Company's [State and County's] agent, it is recognized that the Agent is acting on behalf of the Reinsurer [Lincoln General]." Pl.'s App. 92, Reinsurance Agreement ("RA") Art. XIX. Furthermore, the Preamble to the GAAs states that U.S. Auto is to "perform certain specified acts on behalf" of both State and County and Lincoln General, while Section 2.6 states that U.S. Auto shall be under the "direct supervision and control of the Reinsurer [Lincoln General], and the Reinsurer shall be solely responsible for the acts of the Agent [U.S. Auto]" in performing certain acts. Pl.'s App. 107-108. In Lincoln General's view, these provisions signify that any fiduciary duty that U.S. Auto owes to State and County is transferred to Lincoln General.

Lincoln General's interpretation of these provisions sweepingly imposes a broad general fiduciary duty on U.S. Auto. However, the law does not presume agency, and the party alleging agency has the burden to prove its existence. *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 794

(Tex. App.–Dallas, 2011, no pet.) (citing *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007)). When interpreting contracts, courts do not create fiduciary relationships lightly. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997). Bearing this in mind, the Court finds that Lincoln General has not demonstrated that these provisions indicate that U.S. Auto owes it a fiduciary duty.

Lincoln General's reliance on Article XIX of the Reinsurance Agreement is misplaced. Together with GAA Section 7.1, Lincoln General interprets this clause to mean that U.S. Auto acts as its fiduciary when collecting and maintaining premiums. Under this interpretation, then, U.S. Auto acts as a fiduciary with regard to all business related to the Reinsurance Agreements. However, the Court agrees with U.S. Auto that, under the terms of the GAAs, it was permitted to retain its commissions before depositing any excess into the Premium Trust Account. Pl.'s App. 112, GAA ¶ 7.2. Consequently, before calculating the appropriate fees that were due to Lincoln General, U.S. Auto was not acting in a fiduciary capacity. This is consistent with the Texas Insurance Code, which states that a managing general agent holds money on behalf of an insured or insurer in a fiduciary capacity, and must deposit the money collected for the insurer in an escrow account. *See* TEX. INS. CODE §§ 4053.105-4053.106. Under Lincoln General's interpretation, all premiums, including fees to which U.S. Auto is guaranteed under the Reinsurance Agreements, would be held by U.S. Auto in a fiduciary capacity. Such an interpretation cannot be squared with terms of the agreements because it would eliminate any need for an escrow account.

Furthermore, neither the Preamble nor Section 2.6 of the GAA supports Lincoln General's theory of agency. The Preamble states simply that U.S. Auto will perform specific acts, as enumerated by contract, on behalf of the Reinsurer. This language merely reinforces the fact that U.S. Auto does

not owe a general fiduciary obligation to Lincoln General, but instead owes a fiduciary obligation with regard to money that is deposited in the Premium Trust Account. Again, consistent with this theory, Section 2.6 states that U.S. Auto acts as an agent of Lincoln General when performing certain tasks related to claims settlements and coverage disputes. Accordingly, these provisions cannot be read to transfer fiduciary duties owed to State and County directly to Lincoln General.

### ii.    Whether U.S. Auto Owed a Fiduciary Duty under the Texas Insurance Code

Lincoln General alleges that the Texas Insurance Code gives rise to a fiduciary duty owed by U.S. Auto to Lincoln General. Specifically, Lincoln General claims that U.S. Auto accounted for and held the money for Lincoln General, which in turn gave rise to a fiduciary duty owed to State and County under the Texas Insurance Code. *See* TEX. INS. CODE § 4053.106. However, Defendants respond that the Texas Insurance Code states only that a fiduciary duty is owed with respect to particular tasks; there is no general duty owed under Texas statutes or regulations.

The Court agrees with U.S. Auto. Lincoln General's reliance on Section 4053.106 is misplaced. Indeed, these regulations make clear that while U.S. Auto owes a fiduciary duty when holding money on behalf of State and County, that duty is limited to instances when U.S. Auto deposits money into the Premium Trust Account. *See supra* Part A.i. As a result, U.S. Auto does not owe Lincoln General a general fiduciary duty. *See National Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 701 (Tex. 2007) (finding that the Code did not impose a general fiduciary duty on agents). Furthermore, there is no indication that Section 4053.106 applies readily to the reinsuring party. Remaining portions of the code use refer to both "insurers" and "reinsurers," *see e.g.,* TEX. INS. CODE § 4053.109, and the Texas Supreme Court rejected an argument that the Code applies to third-party administrators. *See id.* ("The Legislature could have rationally presumed that parties to

- 11 -

a written agreement, especially parties in a commercial setting bargaining in their own self interest, would set out their respective duties, obligations, and expectations in the agreement . . . ."). Accordingly, the Court finds that U.S. Auto does not owe Lincoln General a fiduciary duty under the Texas Insurance Code.

Having considered the parties' arguments, and their interpretations of the Reinsurance Agreements and GAAs in the context of the record as it exists, the Court finds that U.S. Auto did not owe Lincoln General a fiduciary duty under either Texas regulations or the GAAs. Therefore, the Court **GRANTS** Defendants' Motion with respect to Plaintiff's claim against U.S. Auto for breach of fiduciary duty.

    iii.    <u>Whether Doug Maxwell Owed a Fiduciary Duty under the Texas Insurance Code and Common Law</u>

Lincoln General argues that both the Texas Insurance Code and common law create a fiduciary duty with respect to Doug Maxwell.[5] In its Motion, Lincoln General states that Doug Maxwell was appointed as a managing general agent by State and County with respect to business produced under the Reinsurance Agreements. *See* Pl.'s App. 160, Doug Maxwell Dep. 121:12-16, Nov. 14, 2011. Under the Texas Insurance Code, "[a] managing general agent holds money on behalf of an insured or insurer in a fiduciary capacity and shall properly account for that money as required by . . . a contract with an insurer." TEX. INS. CODE § 4053.106 (West 2009). Because Doug Maxwell acted as a managing general agent with respect to business produced under the Reinsurance Agreements, Lincoln General concludes that he owes Lincoln General a fiduciary duty.

---

[5] The Court notes that Doug Maxwell filed a Motion to Dismiss Under Rule 12(b)(6) (doc. 70). To the extent that this Order addresses the issues raised in that Motion, it is hereby **DENIED as moot**.

Under Texas law, an agent is "authorized by a person or entity to transact business or manage some affair for the person or entity." *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.–Houston [14th Dist.] 2005, no pet.). "The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist." *Id.* (citing *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App.–Texarkana 2002, pet. denied)). Therefore, if the party seeking to establish an agency relationship fails to present proof of control, only an independent contractor relationship is established. *Id.*

Doug Maxwell's declaration, which Lincoln General has not challenged, states the following:

> At no time has Lincoln General, or any employee of Lincoln General, controlled the manner in which I did my job as president of U.S. Auto, nor did any employee ever control the manner and means by which I was to perform or by which I actually performed my duties as president of U.S. Auto. All decisions I made in relation to the business of U.S. Auto that is the subject of the General Agency Agreements and the Quota Share Reinsurance Agreements were solely my own, acting as president of U.S. Auto.

Defs.' App. Resp. Pl.'s Mot. Summ. J. 203, Declaration of James Douglas Maxwell ¶ 2. Given that Lincoln General has not proffered any evidence that would cast doubt on Doug Maxwell's statements, the Court concludes that Lincoln General did not have control over his decisions related to the collection and calculation of commissions and premiums. As the Court noted *supra*, it has further found that the Texas Insurance Code did not create a fiduciary relationship between U.S. Auto, as the managing general agent, and Lincoln General, as the reinsuring party. Accordingly, no reasonable juror could find that Doug Maxwell served as a fiduciary to Lincoln General. *See Coleman*, 180 S.W.3d at 588. The Court therefore **GRANTS** Defendants' Motion with respect to Plaintiff's claim for breach of fiduciary duty against Doug Maxwell.

iv.    Aiding and Abetting Breach of Fiduciary Duty

Given that the Court has found that neither U.S. Auto nor Doug Maxwell owed a fiduciary duty to Lincoln General, the Court finds that Doug Maxwell, Jim Maxwell, CSi, Alpha and Santa Fe cannot be found to have aided and abetted breaches of fiduciary duty. Accordingly, Defendants' Motion, with respect to Lincoln General's claim of aiding and abetting a breach of fiduciary duty, is **GRANTED**.

B.    *Conversion*

Lincoln General alleges two separate claims for conversion of property. First, Lincoln General alleges that U.S. Auto intentionally and knowingly misappropriated funds it held in trust for Lincoln General. Pl.'s Compl. ¶¶ 89-92. Second, Lincoln General argues that by transferring expiring policies to Santa Fe when it was in default, U.S. Auto violated the terms of the Reinsurance Agreements and GAAs. Pl.'s Compl. ¶¶ 78-83. Defendants' Motion argues that it should be granted summary judgment as to teach of these claims because both causes of action are precluded by the economic loss rule. The Court will review each party's arguments in turn.

Under Texas law, the elements of conversion law are the following: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for the return of the property. *City Bank v. Compass Bank*, 717 F. Supp. 2d 599, 611 (W.D. Tex. 2011). However, under the economic loss rule, where a defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *See Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 495-96 (Tex. 1991). "When the only

loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 128 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing *id.* at 494-95). In determining whether an alleged injury arises out of contract, "[t]he Texas Supreme Court has unequivocally adopted a broad interpretation of the economic loss rule." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008). Therefore, where a contract spells out the parties' respective rights, it is the contract, rather than common law tort theories, that govern the dispute. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999).

    i.    <u>Conversion of Money</u>

Lincoln General argues that U.S. Auto knowingly misappropriated funds when it failed to include IBNR in its calculation of incurred losses. It alleges that such funds were withheld from Lincoln General for the benefit of Doug Maxwell and other companies affiliated with U.S. Auto. Lincoln General further argues that U.S. Auto misappropriated funds through the improper use of the ZBA to pay insurance claims not reinsured by Lincoln General. In response, U.S. Auto counters that this dispute falls squarely within the terms of the Reinsurance Agreement and GAAs and therefore any claim for conversion of such funds is barred by the economic loss rule. The Court agrees with Defendants.

Lincoln General cites to a number of cases in support of the proposition that a lawsuit that seeks damages that arise out of extra-contractual duties may sound in tort. Lincoln General relies principally on *National Union Fire Insurance of Pittsburgh, PA v. Care Flight Air Ambulance Service, Inc.*, 18 F.3d 323 (5th Cir. 1994), where the Fifth Circuit concluded that an airplane lessee's insurer had causes of action available for both conversion and breach of contract against the lessee. In so

doing, the Court noted that Texas cases have recognized that "the law may impose affirmative duties that are separate and apart from the contractual promises made between those parties." *Id.* at 326. However, unlike the case here, *Care Flight* involved a lease that expressly placed the risk of loss on the lessee, and further provided that the lessor could assert all common law remedies. *Id.* at 527. Additionally, the insurance company sought non-contractual damages that went "beyond economic losses," including loss of use of the aircraft as well as repair costs. *Id.* In this case, however, Lincoln General has failed to indicate how the GAAs or Reinsurance Agreements preserve common law remedies, and has further failed to articulate how its damages constitute anything other than economic loss.

Lincoln General also argues that U.S. Auto has violated additional duties under the Texas Insurance Code. It cites to three specific provisions of the Code, two of which state the duties of a managing general agent,[6] and the third of which notes that an agent who commits fraud may be subject to criminal penalties.[7] These provisions of the Code, however, merely recognize that the parties' contracts are the sources of duties and obligations. *See, e.g.,* TEX. INS. CODE § 4053.105(c) ("Except as provided by the contract [required under the Code], a managing general agent may not . . . convert money that is or should have been deposited in the escrow account."). Consequently, these duties are defined by, rather than separate from, the contours of the parties' agreements. *See Exxon Mobil Corp.*, 192 S.W.3d at 128.

---

[6] The relevant provisions are TEX. INS. CODE § 4053.105 and TEX. INS. CODE § 4053.106.

[7] TEX. INS. CODE § 4005.153.

Lincoln General's argument that conversion is appropriate as to the ZBA related conversion claim must also fail. Lincoln General argues that the economic loss rule is inapplicable to any ZBA related claim because neither the GAAs nor Reinsurance Agreements addresses the creation or use of the ZBA. However, the ZBA was used merely as a means of paying for auto policies that are subject to these agreements. As Lincoln General notes in its Amended Complaint, the ZBA "was funded by Lincoln General for the payment of Lincoln General's share of any claims on policies it reinsured." Pl.'s Compl. ¶ 39. In other words, use of the ZBA was governed by the terms of the GAAs and Reinsurance Agreement, and any alleged violation of Lincoln General's rights is more properly considered as a breach of contract. *See Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 752-53 (Tex. App.–El Paso 2000, no pet.) (holding that because the parties had a contract enumerating an oil production company's responsibilities, any common law action for waste was barred by the economic loss rule).

ii.     Conversion of Expiring Insurance Policies

Lincoln General claims that because U.S. Auto defaulted under the terms of the GAAs and Reinsurance Agreements, U.S. Auto was required to turn over all of its expiring insurance policies to Lincoln General. Lincoln General further asserts that U.S. Auto then misappropriated or converted those policies by giving them to Santa Fe, when the property rightfully belongs to Lincoln General. Defendants argue, in response, that this claim is barred by the economic loss rule because it arises out of the GAAs and Reinsurance Agreements.

The Court agrees with Defendants. Section 8 of the GAA expressly addresses ownership and use of expired policies in the event that U.S. Auto is in default. Pl.'s App. 113, GAA ¶ 8. As Lincoln General notes its Amended Complaint, the GAAs provide that U.S. Auto retains control of the

expiring policies only if it has accounted for and paid over all premiums for which it may be liable. Pl.'s Compl. ¶ 81. Given the nature of these agreements, then, Lincoln General has failed to articulate why a separate cause of action is necessary to recover damages, or further on what basis this claim may not arise from the contract governing its relationship with U.S. Auto. *See Exxon Mobil Corp.*, 192 S.W.3d at 128 (holding that while "a legal duty generally exists in tort for one party not to convert the property of another party, which is separate and apart from any contractual relationship between the parties; however, the analysis does not end there and could not end there—otherwise, there would be no independent injury rule.").

Accordingly, the Court finds that Plaintiff's two separate causes of action for conversion are barred by the economic loss rule because they arise from Defendants' alleged breach of contract. Furthermore, Plaintiff has failed to offer evidence that it bears a special relationship with Defendants that, based on Texas case law, would give rise to a separate theory of liability. Therefore, Defendants' Motion is **GRANTED** as to both of these claims.

C.       *Breach of Contract*

Lincoln General argues that U.S. breached its obligations as set forth in the Reinsurance Agreements, GAAs, and the agreements concerning the ZBA. Under the Reinsurance Agreements, Lincoln General was responsible for calculating commissions by using established formulas.[8] *See* Pl.'s App. 46-47, 85-86. Lincoln General alleges that beginning in May 2007, just after Defendants decided to stop doing business with Lincoln General, Defendants began to exclude IBNR when

---

[8] The Reinsurance Agreements in 2002 and 2003 set out slightly different formulas, but as Lincoln General notes, the concept behind the formulas, and the elements involved in the equation, remained roughly the same.

calculating Incurred Losses, which thereby entitled U.S. Auto to earn much larger commissions. Defendants, in turn, do not deny that IBNR was removed, but instead that Reinsurance Agreements were terminated, and as a result, the definitions of IBNR and Incurred Losses no longer applied. Defendants do not seek to dismiss Lincoln General's claim and instead contend that a genuine issue of material fact remains as to whether it breached the Agreements.

To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a valid contract; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach; and (4) the plaintiff's damages resulting from the breach. *Roof Sys. Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 442 (Tex. App.–Houston [14th Dist.] 2004, no pet.). The interpretation or construction of an unambiguous contract is a matter of law to be determined by the court. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). A term is ambiguous if it is susceptible to more than one reasonable interpretation. *See Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). The determination of whether a term is ambiguous is a legal question. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980).

After U.S. Auto transferred its reinsurance business to Santa Fe in April 2007, U.S. Auto determined that under the terms of the Reinsurance Agreement, it was permitted to remove IBNR from its commission calculation. Defs.' Resp. 30-31. This was because, under U.S. Auto's theory, the Reinsurance Agreements required the addition of IBNR when calculating Incurred Losses "with respect to losses occurring on policies incepting or renewing during each Agreement Year." *See* Pl.'s

App. 79-80, RA § 4.01. U.S. Auto further contends that removal of IBNR was proper because the Reinsurance Agreements were terminated when U.S. Auto elected to transfer reinsurance business to Santa Fe. Where the Reinsurance Agreement is terminated, Section 3.07 provides that several articles of the contract shall survive, but excludes Article IV, and thus Section 4.01. *See* Pl.'s App. 79. Therefore, with Article IV eliminated, no other provision in the contract required inclusion of IBNR to calculate Incurred Losses. Defs.' Resp. 34.

Lincoln General argues, in turn, that Section 4.01 "unquestionably provides" that IBNR must be included when calculating Incurred Losses. Pl.'s Br. 23. However, Lincoln General does not provide an adequate response to U.S. Auto's reading of Section 4.01, where IBNR may be excluded because new insurance policies were not incepting or renewing. Rather, Lincoln General claims that U.S. Auto's interpretation is self-serving and motivated by U.S. Auto's financial constraints.[9] Pl.'s Resp. 37-38. While that may be the case, given that the Court has found that U.S. Auto did not owe Lincoln General a fiduciary duty under the Reinsurance Agreements, the Court need not determine whether removing IBNR was self-serving and violative of any duty to the reinsurer. Accordingly, given the evidence proffered by both parties, as well as each party's interpretation of the Reinsurance Agreements, the Court finds that the Reinsurance Agreement does not unambiguously establish each party's obligations in case of termination.[10] *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527,

---

[9] Lincoln General claims that Doug Maxwell made the decision in part because Gamma, an affiliate of U.S. Auto, was being sued for similar conduct. Pl.'s Resp. 38.

[10] Both parties contest, in passing, whether the 2003 Reinsurance Agreement was "terminated" when U.S. Auto ceased writing insurance policies on State and County Paper. *See* Defs.' App. Resp. Pl.'s Mot. Summ. J. 96, Decl. Doug Maxwell ¶ 19. Neither party has provided briefing on the question of whether this action terminated the contract, and therefore the Court will not determine, at this moment, whether the Agreements were terminated.

531 (Tex. 1987). Given that the Court must draw every favorable inference in favor of the non-movant, the Court finds that Section 4.01 can be reasonably interpreted to eliminate any requirement that U.S. Auto continue to include IBNR in the calculation of Incurred Losses.

Accordingly, given that the Court finds ambiguity in the Reinsurance Agreements, Lincoln General's Motion with regard to its claim for breach of contract is **DENIED**.

D.      *Tortious Interference with Contract*

Defendants move for summary judgment on Lincoln General's two claims for tortious interference with contract. In their Motion, they argue that Lincoln General has failed to offer any evidence that Defendants acted to interfere with the contracts, and even if there were such actions, there is no evidence that any such interference was "willful and intentional." They also argue that Lincoln General has failed to demonstrate that any alleged interference was the proximate cause of its damages. Plaintiff responds that Gamma, CSi, Alpha, Santa Fe, and Jim Maxwell each interfered with Lincoln General's contractual relations by accepting money from U.S. Auto.

"The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1998).

Interference with a contract is tortious only if it is intentional. *Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). A party requires intent to interfere, not merely intent that a particular act is done. *Id.* Thus, the defendant must be more than just a "willing participant" in a breach. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993). The plaintiff must therefore prove that the defendant took an active part in persuading the party to

breach. *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139-40 (Tex. App.–Eastland 1992, writ denied). While mere knowledge of another party's contract is not sufficient to constitute inference, when the intentional acts of a person serve to frustrate the purpose of another's contract with a third party, such acts can constitute the requisite interference. *Exxon Corp. v. Miesch*, 180 S.W.3d 299, 339 (Tex. App.–Corpus Christi 2005, pet. granted) *aff'd in part & rev'd in part on other grounds*, No. 05–1076, 2010 WL 5133461 (Tex. Dec. 17, 2010).

> i.      Tortious Interference by Gamma

Lincoln General alleges that Defendant Gamma willfully induced, encouraged, and aided U.S. Auto's breach of the Reinsurance Agreements and GAAs. Lincoln General claims that, as a result of this tortious inference, it suffered damages in the amount of $869,801.70. Pl.'s Compl. ¶¶ 93-95; Pl.'s Resp. 45-46. Lincoln General posits that Gamma, while acting on behalf of U.S. Auto, paid 100% of the claims on policies where Lincoln General's obligation was to pay only 55%. Pl.'s Resp. 45. Lincoln General alleges that Gamma issued checks from the ZBA that overpaid for claims, while also being aware of the contract between U.S. Auto and Lincoln General and of the appropriate percentage owed under Reinsurance Agreements.[11] Defendants respond that Doug Maxwell has stated that the decision to pay 100% of the 2002 claims was made solely by U.S. Auto and Doug Maxwell, and was not made in connection with Gamma. *See* Defs.' Reply 23; App. 300, Decl. Doug Maxwell ¶ 28.

---

[11] Lincoln General alleges that Gamma issued checks from the ZBA whereby Lincoln General paid 100% of the claims amounts for the 2002 Reinsurance Agreement, though it was required to pay only 55% of claims. Pl.'s Resp. 46.

As Lincoln General alleges, Gamma acted as an agent of U.S. Auto. Pl.'s Compl. ¶ 19. For an agent to tortiously interfere with the principal's contract, the plaintiff must prove that the agent acted willfully and at the expense of the principal's interest. *Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997) (citing *Holloway*, 898 S.W.2d at 796). "To show tortious interference, neither an agent's merely mistaken assessment of its principal's interests nor the possibility that the agent might have acted in its own interests and contrary to its principal's is enough." *Id.* In this case, Doug Maxwell has stated that he acted solely in order to advance U.S. Auto's interests. Lincoln General, on the other hand, states only that "Gamma knew of the contract" and acted to interfere with U.S. Auto's contractual relations with Lincoln General. Pl.'s Resp. 46. But such knowledge, without any evidence that Gamma acted at Lincoln General's expense, fails to create a question of fact. *See Dutta v. Pistenmaa*, No. 3:01-cv-2053-M, 2002 WL 32332550, at *4 (N.D. Tex. Nov. 8, 2002).

Therefore, given that Lincoln General has failed to challenge the validity of this statement, or to proffer any evidence that would suggest that Gamma acted in a way that was so contrary to U.S. Auto's interests that it could only have been motivated by its own interests, the Court finds that even in the light most favorable to the non-movant, Lincoln General has failed to raise a genuine issue of fact as to whether Gamma tortiously interfered with the contract. Accordingly, Defendants' Motion, with regard to Plaintiff's claim against Gamma for tortious interference, is **GRANTED**.

    ii.      Tortious Interference by CSi and Alpha, Santa Fe, and Jim Maxwell

Lincoln General alleges that CSi and Alpha[12] interfered with Lincoln General's contractual relations when it contracted with U.S. Auto to receive management fees. Pl.'s Resp. 46. It is undisputed that U.S. Auto used the services of Alpha and CSi for its technology needs, and earned what would otherwise have been U.S. Auto's retained earnings as compensation. Defs.' Ans. ¶ 23. Therefore, according to Lincoln General, CSi and Alpha's acts were willful and intentional because both entities were aware that a contract existed between Lincoln General and U.S. Auto and that Lincoln General had an interest in ensuring that adequate funds remained on hand to pay claims. Under Lincoln General's theory, then, U.S. Auto's decision to exclude IBNR beginning with the May 2007 activity was caused, at least in part, by these distributions to Alpha and CSi. Pl.'s Resp. 48.

While Lincoln General's argument that CSi and Alpha interfered with U.S. Auto's contract by accepting money is not the most pellucid, given that Doug Maxwell owned a large share of both entities, the Court cannot say as a matter of law that neither acted in order to frustrate U.S. Auto's contract with Lincoln General. U.S. Auto, as the movant with regard to this claim, has not presented evidence that neither CSi nor Alpha knew that the money they received was paid in violation of Lincoln General's rights. *See Exxon Corp.*, 180 S.W.3d at 339. Accordingly, Defendants' Motion, with regard to claims of tortious interference against Alpha and CSi, is **DENIED**.

---

[12] Alpha is a limited partnership, whose general partner is CSi, which owns a 1% interest. The limited partners of Alpha are Doug Maxwell (who owns 59.4% of it) and his father Jim Maxwell (who owns 39.6% of it). Defs.' Ans. ¶ 22.

iii.    Tortious Interference by Santa Fe and Jim Maxwell

Lincoln General also alleges that both Santa Fe and Jim Maxwell willfully and intentionally interfered with Lincoln General's contracts because both defendants received money from Alpha. Pl.'s Resp. 49. Lincoln General also alleges that Jim Maxwell accepted close to $30 million in distributions from U.S. Auto, and was "ultimately the person who caused the transfer of all or virtually all of U.S. Auto's net revenues to CSi and Alpha." Pl.'s Resp. 50. Lincoln General's argument suggests that any party that has accepted money from Alpha, because that money may have originated from U.S. Auto, is liable for tortious interference. However, this legal theory is not supported by Texas case law, which requires that the plaintiff demonstrate that defendants took an active role in the breach. A party's knowledge, without more, is insufficient to create a genuine issue of material fact. *See John Carlo Tex.*, 843 S.W.2d at 472 (noting that defendant must intend to interfere with a third party's contract).

Accordingly, Defendants' Motion, with respect to Plaintiff's claim of tortious interference against Santa Fe and Jim Maxwell, is **GRANTED**.

E.    *Attorney's Fees*

Lincoln General argues that Defendants' counterclaim for attorney's fees must be dismissed. Defendants, in their Amended Answer, asserted that U.S. Auto was entitled to attorney's fees under Section 12.01 of the Reinsurance Agreement, which states the following:

> "The Reinsurer shall assume and be liable for and pay on behalf of the Company 100% of all losses and loss judgment expenses incurred in connection with risks covered by this Agreement . . . . The Reinsurer shall also be liable for 100% and pay on behalf of the Company all costs, expenses and fees (including, but not limited to attorneys' fees) incurred by the Company in connection with the investigation or settlement or contesting the validity of claims or losses covered under this Agreement (this shall include but of course not be limited to costs, expenses, and fees resulting

from Declaratory Judgment or injunctive action brought by an insured or other person.).

Defs.' Ans. ¶ 163; Pl.'s App. 88, RA § 12.01. Lincoln General argues that "the Company," as used in the Reinsurance Agreement, refers solely to State and County. Furthermore, Lincoln General argues that U.S. Auto first asserted this claim over six years after the inception of its relationship with Lincoln General, and thus both parties have understood that Lincoln General is not required to bear this expense.

The Court is not persuaded that U.S. Auto is foreclosed, as a matter of law, from obtaining legal fees based on the Reinsurance Agreements. Several sections of the Reinsurance Agreements contemplate U.S. Auto's subrogation rights. *See, e.g.,* Pl.'s App. 89, RA § 13.01; Pl.'s App. 69, GAA § 15.1. Given the intertwining relationship between the insuring party and agent, the Court disagrees that the Reinsurance Agreements unambiguously preclude U.S. Auto from collecting legal fees relating to the adjustment of insurance claims. Furthermore, the doctrine of quasi-estoppel, which Lincoln General invokes to prevent U.S. Auto from collecting legal fees, is simply inapplicable here. *See Bott v. J.F. Shea Co.*, 299 F.3d 508, 512-13 (5th Cir. 2002) (noting that Texas courts apply quasi-estoppel "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit"). Lincoln General has not argued that U.S. Auto has benefitted from paying legal fees, and therefore the Court finds that U.S. Auto is not estopped from invoking Section 12.01 to collect legal fees under the Reinsurance Agreement.

Accordingly, the Court finds that Plaintiff has not satisfied its burden by demonstrating that no genuine issue of fact exists as to whether U.S. Auto is entitled to attorney's fees. Plaintiff's Motion regarding Defendants' counterclaim is **DENIED**.

- 26 -

IV.

CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's Motion for Summary Judgment is **DENIED** and that Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

The Court finds that Defendants' Motion is **GRANTED** with respect to Plaintiff's claims for the following: breach of trust and/or fiduciary duties (Lincoln General v. U.S. Auto); breach of trust/fiduciary duties (Lincoln General v. Doug Maxwell); aiding and abetting breach of trust and/or fiduciary duties; conversion of expiring insurance policies (Lincoln General v. U.S. Auto & Santa Fe); misappropriation and conversion of funds (Lincoln General v. U.S. Auto); tortious interference with contract (Lincoln General v. Gamma); and tortious interference with contract with respect to claims against Santa Fe and Jim Maxwell. These claims are hereby **DISMISSED**.

The Court further finds that Defendant's Motion with respect to Plaintiff's claims for tortious interference against Alpha and CSi is hereby **DENIED**.

Finally, the Court finds that Plaintiff's Motion with respect to Plaintiff's claim for breach of contract and Defendants' claim for attorney's fees is hereby **DENIED**.


**SO ORDERED.**

**SIGNED August 30, 2012**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 27 -