IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LINCOLN GENERAL INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | | |
| v. | § § | Case No. 3:16-cv-03198-B |
| U.S. AUTO INSURANCE SERVICES, INC., *et al.*, | § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are (1) a Motion for Judgment against Defendant James T. Maxwell ("Jim Maxwell" or "Maxwell") filed by Plaintiff Lincoln General Insurance Company, Inc. ("Lincoln General") (ECF No. 260) and (2) a Motion for Summary Judgment filed by Defendant Jim Maxwell (ECF No. 264). For the following reasons, the Court should GRANT Lincoln General's Motion and enter a default judgment against Maxwell and DENY Maxwell's Motion for Summary Judgment.

**Background**

This case has been the subject of numerous prior opinions and orders. *See, e.g.*, *Lincoln Gen. Ins. Co. v. U.S. Auto Servs., Inc.*, 809 F. Supp. 2d 582 (N.D. Tex. 2011), *appeal dismissed*, 787 F.3d 716 (5th Cir. 2015); *Lincoln Gen. Ins. Co. v. U.S. Auto Servs., Inc.*, 892 F. Supp. 2d 787 (N.D. Tex. 2012), *aff'd in part, rev'd in part*, 787 F.3d 716 (5th Cir. 2015); *Lincoln Gen. Ins. Co. v. Maxwell*, 2018 WL 4610533

(N.D. Tex. Sep. 26, 2018). Accordingly, the Court will recount only the background facts pertinent to dispose of the pending motions.

In November 2007, Lincoln General sued U.S. Auto Insurance Services, Inc. ("U.S. Auto"), Gamma Group, Inc. ("Gamma"), CSI Agency Services, Inc. ("CSI"), Alpha Partners, Limited ("Alpha"), Santa Fe Auto Insurance Company ("Santa Fe"), James Douglas Maxwell ("Doug Maxwell"), and Jim Maxwell for breach of various general agency agreements ("GAAs") and corresponding reinsurance agreements ("the First Lawsuit"). *Lincoln Gen. Ins. Co. v. U.S. Auto Servs., Inc.*, No. 3:07-cv-1985-B, ECF No. 1 at 1, 10-12 (N.D. Tex. 2007). All parties to the First Lawsuit executed a Memorandum of Understanding ("MOU") that contained an agreement to settle Lincoln General's claims. Pl.'s Ex. B at 1-6 (ECF No. 57-4). However, the defendants to the First Lawsuit failed to fulfill their obligations under the MOU. Am. Compl. 2-3, ¶¶ 3-6 (ECF No. 57-1). Consequently, Lincoln General filed this second lawsuit, originally styled as *Lincoln General Insurance Co. v. U.S. Auto Insurance Services, Inc.*, No. 3:10-cv-02307-B (N.D. Tex. 2010).

In this lawsuit, Lincoln General asserts various claims against the same defendants named in the First Lawsuit. *See* Am. Compl. 19-25, ¶¶ 74-108. Following a bench trial, the Court found CSI and Alpha, jointly and severally, liable to Lincoln General in the amount of $16,500,000.00 for tortious interference with contract. Findings of Fact and Conclusions of Law 49-64 ("FFCL") (ECF No. 169). The Court entered judgment against CSI and Alpha consistent with its findings. J. 1. (ECF No. 170). The following claims against the following defendants remain

and have been severed to form the matter as styled above: (1) a claim for breach of fiduciary duty and a claim for aiding and abetting breach of fiduciary duty against Doug Maxwell; (2) a claim for aiding and abetting breach of fiduciary duty and a claim for tortious interference with contract against Jim Maxwell; and (3) a claim for breach of fiduciary duty against U.S. Auto. *See* Order on Severance 2 (ECF No. 227).

The Maxwell Group is a collection of affiliated entities. Doug and Jim Maxwell are limited partners and CSI is the general partner of Alpha. Am. Compl. 4, ¶ 11. CSI, Gamma, Santa Fe, and U.S. Auto are all Texas Corporations. *Id.* at 3-4, ¶¶ 8-13. Jim Maxwell, at all relevant times, was a partial owner of CSI, Alpha, and Santa Fe, and was an officer of CSI. *Id.* at 5, ¶ 18. Doug Maxwell, Jim Maxwell's son, was at all relevant times the lone director, president, vice president, secretary, and treasurer of U.S. Auto and Gamma. *Id.* at 5, ¶ 19.

Lincoln General is the reinsurer of various auto insurance policies sold by U.S. Auto. *Id.* at 1-2, ¶ 1. Lincoln General is therefore purportedly entitled to a portion of the premiums arising under the reinsured policies, which U.S. Auto is supposed to collect and handle as a fiduciary to Lincoln General. *Id.* Moreover, according to the GAAs at issue, U.S. Auto was required to hold the premiums in a trust account, and to the extent there were losses, it was responsible to bear those losses out of the premium trust account. FFCL 19-20. Instead, U.S. Auto transferred approximately $50 million from the premium trust account to CSI and Alpha. *Id.* at 20. As a result, it became unable to bear the losses it was required to

bear under the GAAs and reinsurance agreements. Am. Compl. at 12-14, ¶¶ 45-48; FFCL 35. Moreover, according to Lincoln General, Jim Maxwell assisted in U.S. Auto's breach of these purported fiduciary duties to Lincoln General. Am. Compl. 15, ¶ 56. It is Lincoln General's position that, although Jim Maxwell is not an officer, owner, or director of U.S. Auto, he was involved in its improper conduct and was motivated by his pecuniary interest as partial owner of Santa Fe, CSI, and Alpha; as lender to one or more members of the Maxwell Group; and by virtue of his familial relationship to Doug Maxwell, the sole U.S. Auto board member. *Id.*

As a sanction for his misconduct in this litigation, Jim Maxwell's pleadings were struck. *Lincoln Gen. Ins. Co.*, 2018 WL 4610533, at *3. In the severed action, Lincoln General noticed Jim Maxwell's deposition and served a subpoena *duces tecum* seeking documents related to his assets. *Id.* at *1. But Maxwell provided only limited responsive documents to the subpoena and refused to answer numerous questions in his deposition. *Id.* The Court then ordered Maxwell to provide certain documents to Lincoln General at his own expense and appear at another deposition where he would be required to answer questions completely and honestly. *Id.*; Order 1-2 (ECF No. 241). In the Order, the Court warned Maxwell that should he further engage in discovery abuse, it would "result in sanctions and the striking of his pleadings." Order 2. Lincoln General then noticed a second deposition. *See Lincoln Gen. Ins. Co.*, 2018 WL 4610533, at *2. Maxwell appeared for this deposition, but he failed to produce the responsive documents the Court had ordered him to produce, and instead provided evasive, combative, and

misleading testimony. *Id.* The Court found that this was a pattern of contumacious conduct towards Maxwell's discovery obligations and various court orders. *Id.* Because no lesser sanction would suffice to deter Maxwell from continued discovery abuses, Maxwell's pleadings related to the remaining claims against him, including his Answer, were struck from the record under Fed. R. Civ. P. 37(b)(2)(A)(iii). Lincoln General subsequently filed the pending Motion for Judgment under Fed. R. Civ. P. 55 and sought and obtained a Clerk's Entry Default (ECF No. 270) against Jim Maxwell. Maxwell filed his summary judgment motion several months later, arguing that all the documents and other items Lincoln General requested had been provided to the extent possible and asking that the claims against him be dismissed. Mot. Summ. J. 1, 5. Both motions are fully briefed and ripe for determination.

## Legal Standards and Analysis

### I. Jim Maxwell's Motion for Summary Judgment

Jim Maxwell's pending Motion for Summary Judgment is improper and should be denied. Maxwell filed his summary judgment motion on July 8, 2019. However, the District Court's Scheduling Order, which is unmodified as to the dispositive motion deadline, required that dispositive motions be filed by November 18, 2011. *See* Sched. Order 1 (ECF No. 34). Thus, Maxwell filed his Motion for Summary Judgment more than *seven years* late. Also, this is Maxwell's

second summary judgment motion. *See* Mot. Summ. J. (ECF No. 95).[1] Local Rule 56.2(b) precludes a party from filing more than one summary judgment motion unless the party obtains the presiding judge's approval to file a second or subsequent motion. Maxwell failed to obtain court approval to file the pending summary judgment motion. Accordingly, the Court recommends DENYING Jim Maxwell's Motion for Summary Judgment (ECF No. 264).

## II. Lincoln General's Motion for Default Judgment

Rule 55 governs applications for default and default judgment. Fed. R. Civ. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* The Clerk will enter a default when the party's default is established by an affidavit or otherwise. *Id.* (citing Fed. R. Civ. P. 55(a)). After the entry of default, a plaintiff may apply to the Court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.

---

[1] Maxwell initially obtained summary judgment on both Lincoln General's claims against him—aiding and abetting breach of fiduciary duty and tortious interference with contract. *Lincoln Gen. Ins. Co.*, 892 F. Supp. 2d at 804. However, the Fifth Circuit ultimately reversed the grant of summary judgment as to both claims against him. *Lincoln Gen. Ins. Co.*, 787 F.3d at 733.

1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (4th ed.)). To determine whether to enter default judgment, the Court should examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (2d ed. 1983)).

After considering the record in this case, including Lincoln General's Complaint, the Motion for Default Judgment, its supporting materials, and the applicable law, including the *Lindsey* factors, the Court recommends entering default judgment against Jim Maxwell. Here, there are no material issues of fact; rather, because of Maxwell's default, the Court takes as true the facts Lincoln General alleges in its Complaint. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017). Nor is there substantial prejudice against Maxwell. He was properly served and answered the lawsuit. But despite warning that continued discovery abuse would result in striking of his pleadings, Maxwell willfully failed to comply with Lincoln General's

discovery requests. The record contains ample evidence to support the conclusion that Maxwell behaved willfully when he violated this Court's discovery orders, and there was good reason to find that that Maxwell's pattern of contumacious conduct in these proceedings established that no lesser sanction would be sufficient to deter Maxwell from future abusive behavior. *Lincoln Gen. Ins. Co.*, 2018 WL 4610533, at *2. The grounds for default against him were thus clearly established. *See Cortis, Inc. v. Cortislim Int'l, Inc.*, 2016 WL 6330579, at *1 (N.D. Tex. July 22, 2016) (Boyle, J.) (granting default judgment following order striking defendant's pleadings and entry of default). And the Clerk properly entered default against Maxwell. Clerk's Entry Default (ECF No. 270).

      The conduct causing the striking of Jim Maxwell's pleadings, the basis for his default, was not the result of good-faith mistake or excusable neglect. Rather, it resulted from Maxwell's willful violation of the Court's discovery orders. Moreover, entering default judgment against Maxwell is not "harsh." *See Lindsey*, 161 F.3d at 893. As discussed above, the Court found that no lesser sanction would suffice to deter Maxwell from continued discovery abuses. This mitigates the harshness of entering a default judgment against him. *See Cortis, Inc.*, 2016 WL 6330579, at *3. Finally, the Court is not aware of any facts that would constitute good cause to set aside the default should Maxwell challenge it. His self-serving assertions that he provided all the documents and other items Lincoln General requested (*see* Mot. Summ. J. 1, 5), are unavailing. The Court has considered and

8

rejected these same assertions before. *See Lincoln Gen. Ins. Co.*, 2018 WL 4610533, at *3.

The pleadings also sufficiently support a default judgment, at least as to Lincoln General's claim against Maxwell for tortious interference with contract, and damages can be calculated with reasonable certainty without a hearing. As set forth in Lincoln's Complaint, Motion for Default Judgment, the District Court's Findings of Fact and Conclusions of Law from the bench trial, and uncontroverted supporting materials, Lincoln General and U.S. Auto were parties to reinsurance agreements and GAAs. FFCL 49; Am. Compl. 1-2, ¶ 1. Lincoln General alleges the transfer of the funds by Alpha and CSI out of the U.S. Auto premium trust account so that those funds could be paid to the Maxwells rather than remain available to meet U.S. Auto's obligations to Lincoln General constitutes intentional interference with those reinsurance agreements and GAAs. FFCL 49-50; Am. Compl. 24-25, ¶¶ 105-108. Moreover, because the reinsurance agreements and the GAAs required that all losses under the target loss ratio be paid out of the premium trust account, the transfer of the money out of the premium trust account caused the lack of funds available in the premium trust account and U.S. Auto's breach of contract. FFCL 52-53. Moreover, Lincoln General suffered injury because it was forced to create a zero-balance account to prevent regulatory fines and late payment of claims, and U.S. Auto did not pay Lincoln General the reinsurance margin it was owed. *Id.* at 60-61.

These actions constitute tortious interference with contract. *See Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995) (enumerating the elements of tortious interference with contract as follows: (1) existence of a contract subject to interference; (3) occurrence of an act of willful and intentional interference; (3) the act is the proximate cause of plaintiff's damage; and (4) actual loss or damage occurred). Indeed, the District Court found Alpha and CSI jointly and severally liable to Lincoln General in the amount of $16,500,000.00 for tortious interference with contract based on this exact conduct. Identical judgment against Jim Maxwell is appropriate because, by his default, he admits to his role in the decision to improperly distribute the premiums and other funds owed to Lincoln General. *See Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002). With respect to Lincoln General's claim that Jim Maxwell is also liable for aiding and abetting breach of fiduciary duty, such a claim depends on the success of Lincoln General's underlying breach of fiduciary duty claim against U.S. Auto. *See Ashford Hosp. Prime Inc. v. Sessa Capital (Master) LP*, 2017 WL 2955366, at *6 (N.D. Tex. Feb. 17, 2017) (dismissing aiding and abetting breach of fiduciary duty claim where underlying claim for breach of fiduciary duty had been dismissed). No judgment against U.S. Auto has been entered in this matter yet. Nonetheless, to the extent U.S. Auto has breached its fiduciary duty to Lincoln General, by his default, Jim Maxwell admits to his role in aiding and abetting such a breach. *See Jackson*, 302 F.3d at 524.

In the default judgment context, the Court can render a decision as to damages without an evidentiary hearing where the amount claimed is a liquidated sum or one capable of mathematical calculation. Fed. R. Civ. P. 55(b)(2)(B); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Here, Lincoln General's damages are stipulated to be $16,500,000.00. FFCL 64. Thus, mathematical calculation is not necessary, and the amount claimed is a liquidated sum. As discussed above, following a bench trial, the District Court held CSI and Alpha, Jim Maxwell's entities, jointly and severally, liable to Lincoln General in the amount of $16,500,000.00 for tortious interference with contract. J. 1. By this default, Maxwell is likewise liable to Lincoln General for the same cause of action arising from the same facts.

The Court also finds Jim Maxwell is not an infant, incompetent, nor entitled to relief under the Servicemembers Civil Relief Act. *See* 50 U.S.C. § 3901 (formerly cited as 50 App. U.S.C. § 501). Therefore, the District Court should GRANT Lincoln General's Motion for Judgment (ECF No. 260) and enter default judgment against Jim Maxwell consistent with these Findings, Conclusions, and Recommendation. Moreover, the District Court should DENY Jim Maxwell's Motion for Summary Judgment (ECF No. 264). Finally, the District Court should sever the remaining claims against Doug Maxwell and U.S. Auto and direct the Clerk to compile the severed claims into a new, separate legal action in which all further proceedings shall transpire.

**SIGNED** December 31, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).